UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
AMY BRANCH, as Executor of the Estate
of DENNIS OVERZAT,

                                Plaintiff,

                -against-

ATR NEW YORK LH, INC. and ATRIA
SENIOR LIVING, INC.,

                              Defendants.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**

2:23-cv-09456 (JMA) (LGD)

**FILED**
**CLERK**

5/14/2025 2:22 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Plaintiff Amy Branch ("Plaintiff"), as the executor of the estate of decedent Dennis Overzat ("Decedent"), brings claims against Defendants ATR New York LH, Inc. and Atria Senior Living, Inc. ("Defendants") alleging negligence and breach of contract in relation to Decedent's stay at Defendants' assisted living facilities. (See Compl., ECF No. 1-2 ¶¶ 34, 45.) Presently before the Court is Defendants' motion to compel arbitration and stay the instant action. For the following reasons, Defendants' motion is GRANTED.

## I. BACKGROUND

For purposes of the instant motion, the Court sets forth only the factual background necessary to determine whether arbitration should be compelled.

On June 6, 2016, Decedent executed an agreement granting his son, Ian Overzat, plenary Power of Attorney ("POA"). (See ECF No. 20-5 at 2-20.) That same day, Decedent also designated Ian Overzat as his Health Care Proxy ("HCP"). (See id. at 21-25.) On June 28, 2018, Ian Overzat, acting in his role as Decedent's HCP and POA, executed a residency agreement to enter Decedent into Defendants' assisted living facility at 53 Ocean Avenue, Bay Shore, New York 11706. (ECF 20-4.) The agreement includes an arbitration provision, which provides:

> It is understood that any and all legal claims or civil actions arising out of or relating to care or services provided to you at Atria Bay Shore by Atria Senior Living Group Inc. ("Atria") (e.g. claims for refund, breach of contract, intentional tort, wrongful death, elder abuse, unfair business practices) or relating to the validity or enforceability of the Residency Agreement for Atria Bay Shore, will be determined by submission to arbitration as provided by: (1) the Federal Arbitration Act ("FAA") 9 U.S.C., Sections 1-16, or (2) NY law, in the event a court determines that the FAA does not apply. This includes claims or actions regarding whether the care or services you received, or lack of care or services, was unnecessary or unauthorized or was improperly, negligently, or incompetently rendered. **Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.**

(ECF No. 20-4 at 35.) (bold in original.) On July 23, 2018, Decedent moved into Atria Bay Shore. (ECF No. 15 at 1-2.) On July 27, 2018, and June 6, 2020, Decedent suffered falls at the facility. (ECF No. 20-6 at 5; ECF No. 21-9 at 4.) Five days after the second fall, Dennis Overzat died. (ECF No. 21-9 at 4.)

On June 1, 2023, Plaintiff filed a summons and complaint in the Supreme Court of the State of New York. (ECF No. 21-3.) On December 22, 2023, Defendants removed the case to this Court based on diversity jurisdiction. (ECF No. 1.) On March 5, 2024, the parties appeared for an initial conference proceeding before Magistrate Judge Lee G. Dunst. (ECF No. 11.) Subsequently, the parties were referred to the EDNY mediation program. (See March 11, 2024 Order.) On June 24, 2024, the parties appeared for mediation before Justice George J. Silver but were unable to resolve their claims. (ECF No. 21-9 at 6; ECF No. 20-6 at 7.) On July 8, 2024, Defendants filed a pre-motion letter to move to compel arbitration. (ECF No. 13.) On August 9, 2024, the Court waived its pre-motion conference requirement and allowed the parties to brief the instant motion. (See August 9, 2024 Order.)

Accordingly, on October 25, 2024, Defendants filed their fully briefed motion to compel arbitration and stay this action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4 9 ("FAA"). (See ECF No. 20.)

2

## II. LEGAL STANDARDS

In reviewing motions to compel arbitration brought under the FAA, the court applies a standard similar to that applicable for a motion for summary judgment. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also Brown v. St. Paul Travelers Companies, Inc., 331 F. App'x 68, 69-70 (2d Cir. 2009) ("The Court must evaluate a motion to compel arbitration, pursuant to the FAA, under a standard similar to the standard for a summary judgment motion.")

In deciding whether to compel arbitration, courts generally conduct a two-part test: "(1) [h]ave the parties entered into a contractually valid arbitration agreement? and (2) [i]f so, does the parties' dispute fall within the scope of that agreement?" Ostreicher v. TransUnion, LLC, 2020 WL 3414633 (S.D.N.Y. 2020) (citing In re Am. Express Fin. Advisors Secs. Litig., F.3d 113, 128 (2d Cir. 2011)). If these two conditions are met, the FAA "mandates that district courts shall direct the parties to proceed to arbitration. . . ." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

"When performing this analysis, the court is not limited to the pleadings, and need not assume the truth of the facts alleged in the complaint." Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170, 182 (S.D.N.Y. 2018) (relying on Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)). "Once the moving party has established the existence of an arbitration agreement, the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." Id. (citing Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010)) (internal citations omitted). At this stage of the analysis, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

### III.   DISCUSSION

#### A.   Validity of the Arbitration Agreement

With respect to the first prong, the Court finds that there is a valid agreement to arbitrate between the parties. Plaintiff disputes the validity of the agreement and asserts that "an evidentiary hearing should be held to determine the issue." (Id.) (citing Wolf v. Hollis Operating Co., LLC, 211 A.D.3d 769, 770 (2d Dep't 2022)). The Court disagrees with Plaintiff and finds that there is no genuine dispute as to the validity of the arbitration agreement.

To determine the validity of an agreement to arbitrate, courts apply principles of contract law. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004). Signatories to a contract are presumed to understand its terms and assent to them unless the party resisting enforcement can demonstrate that the agreement is inapplicable or invalid. See Herskovic v. Verizon Wireless, 2020 WL 1089601 (E.D.N.Y 2020) (requiring a customer resisting arbitration pursuant to a customer agreement to demonstrate that the agreement is deficient); cf. Accardo v. Equifax, Inc., 2019 WL 5695947 (E.D.N.Y. 2019) (denying a motion to compel arbitration where there existed a genuine dispute of material fact as to the existence of a valid arbitration agreement.)

Here, Defendants have satisfied their burden to prove the existence of an agreement to arbitrate. It is undisputed that Decedent signed a plenary POA to his son, Ian Overzat. (ECF No. 20-5 at 2-20.) Ian Overzat then signed the "Agreement to Arbitrate Disputes (NY)" rider to the residency agreement, affixing his signature to the bottom of the page with the designation "POA." (Id. at 35.) By signing the residency agreement, Ian Overzat expressly acknowledged receiving the pre-dispute arbitration clause. See Morgikian v. Fid. Invs., No 20CV05724, 2022 WL 836950, at *3 (E.D.N.Y. Mar. 21, 2022). The Court also finds no evidence in the record calling into question the authenticity of these agreements. Accordingly, the Court finds that Defendants have met their burden to demonstrate the existence of an agreement to arbitrate between the parties.

4

Following the burden-shifting framework described above, given the existence of the arbitration agreement, the burden now moves to Plaintiff to contest its validity. See Harris, 338 F. Supp. 3d 170 at 182 (citation omitted). To that end, Plaintiff summarily argues that "there is no evidence regarding the ability of Plaintiff's decedent to understand what the arbitrations agreement says or whether he in fact would have agreed to waive his rights to a trial by jury." (ECF No. 21-9 at 7.) This argument, however, and the precedent it relies upon, are inapposite. Plaintiff cites no authority as to why Decedent would have to understand the arbitration agreement or waive his rights to trial by jury, when Decedent had already signed a plenary POA to his son, who manifested his assent to both. (See ECF No. 20-5 at 4) (granting authority to Ian Overzat over "claims and litigation" and "all other matters."); c.f. Bergman v. Rosalind & Joseph Gurwin Jewish Geriatric Ctr. of Long Island, Inc., 227 A.D.3d 942, 944, 210 N.Y.S.3d 295, 296 (2024) ("The defendants failed to submit the power of attorney through which the plaintiff allegedly derived authority to bind the resident to arbitration.") (citing Sunshine Care Corp. v. Warrick, 100 A.D.3d 981, 981–982, 957 N.Y.S.2d 122)). Additionally, the authority Plaintiff does cite is misplaced. In Wolf, the State Court found Defendants failed to meet their burden on a motion to compel arbitration where, crucially, they failed to "submit sufficient evidence of the plaintiff's authority to bind the decedent to arbitration at the time he signed the admission agreement on the decedent's behalf. Most significantly, the defendants failed to submit the instrument through which the plaintiff allegedly derived his authority to bind the decedent to arbitration." Wolf, 211 A.D.3d 769 at 770–71 (emphasis added).

Here, Defendants produced the instruments through which the Decedent was bound to Ian Overzat before the latter signed the arbitration agreement. Nowhere does Plaintiff contest the authenticity of these documents. Thus, the Court rejects Plaintiff's argument and finds that there is a valid agreement to arbitrate.

5

### B. <u>Scope of the Arbitration Agreement</u>

Having determined that a binding agreement to arbitrate exists, the Court also finds that the arbitration agreement governs Plaintiff's claims. The agreement mandates arbitration for "any and all legal claims or civil actions arising out of or relating to care or services provided to you at Atria Bay Shore by Atria Senior Living Group Inc. ("Atria") (e.g. claims for refund, breach of contract, intentional tort, wrongful death, elder abuse, unfair business practices)." (ECF No. 20-4 at 35.) As the Second Circuit has explained in interpreting similarly broad language, "[t]he clause in this case, submitting to arbitration 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause." <u>Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.</u>, 58 F.3d 16, 20 (2d Cir. 1995). In situations involving such broad clauses, "there is a presumption of arbitrability ... [and t]he Court will compel arbitration of even a dispute that does not implicate the contract's express provisions as long as 'the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.'" <u>Catz v. Precision Glob. Consulting</u>, No. 19 CIV. 7499, 2021 WL 1600097, at *8 (S.D.N.Y. Apr. 23, 2021) (quoting <u>Collins & Aikman Prods. Co.</u>, 58 F.3d at 23).

Here, neither party disputes that Plaintiff's claims are covered by the Agreement's express provisions in that he brings claims regarding the care and services provided to Decedent at Atria Bay Shore. (<u>See generally</u>, Compl.) Nor could they. Accordingly, the broad scope of the Agreement supports an order to compel arbitration.

### C. <u>Waiver of Arbitration</u>

Plaintiff further argues that "even if there was a valid agreement defendants waived their right to enforce the arbitration agreement after litigating the matter for over 13 months and inducing Plaintiff to defer depositions with what turned out to be an insincere effort to mediate and

6

resolve the case." (ECF No. 21-1 at 7.) The Court again disagrees and finds that Defendants have not waived their right to enforce the arbitration agreement.

As a threshold matter, "'there is a strong presumption in favor of arbitration, [and] waiver of the right to arbitration is not to be lightly inferred.'" Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 104–05 (2d Cir. 2002) (quoting Coca–Cola Bottling Co. v. Soft Drink and Brewery Workers Union Local 812, 242 F.3d 52, 57 (2d Cir. 2001)). In fact, "the rule preferring arbitration, when agreed upon, ha[s] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 228 (2d Cir. 2001); Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995). Nevertheless, a party may waive its right to arbitration "when it engages in protracted litigation." Tech. in P'ship, Inc. v. Rudin, 538 F. App'x 38, 39 (2d Cir. 2013) (quoting In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2d Cir. 2000)); see also De Jesus v. Gregorys Coffee Mgmt., LLC, No. 20CV6305, 2022 WL 3097883, at *7 (E.D.N.Y. Aug. 4, 2022) (same).

"To determine whether a party has waived its right to arbitration, a court considers '(1) the time elapsed from when litigation was commenced until the request for arbitration' and '(2) the amount of litigation to date, including motion practice and discovery.'" De Jesus, 2022 WL 3097883, at *7 (quoting LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC, 764 F. App'x 105, 107 (2d Cir. 2019)); La. Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010) (same)); Johnson v. Ensite USA, Inc., No. 21-CV-4437, 2022 WL 463381, at *4 (S.D.N.Y. Feb. 15, 2022) (similar). "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case." La. Stadium & Expo. Dist., 626 F.3d at 159. Instead, the Court considers whether Defendants "knowingly relinquish[ed] the

7

right to arbitrate by acting inconsistently with that right" by considering the time elapsed and the amount of litigation to date. Morgan v. Sundance, Inc., 596 U.S. 411, 415 (2022).

Here, the Court finds that Defendants have not waived their right to enforce the arbitration agreement. Although Plaintiff is correct that Defendants "litigat[ed] the matter for over 13 months" before moving to compel arbitration, there was minimal discovery exchanged, and no depositions have taken place. (ECF No. 21-9 at 6.) Put another way, although this case has been open for over 13 months, scant litigation has occurred. After the case was initially removed to federal court in December of 2022, the parties appeared for one initial conference and one mediation session, which Plaintiff states "lasted less than 15 minutes." (Id.) Despite the delay, the lack of actual litigation militates strongly against a finding that Defendants have waived enforcement of the arbitration provision. See Thyssen, 310 F.3d 102 at 105 ("This Circuit has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery.") (collecting cases); accord McClain v. Rochdale Vill., No. 18CV03781, 2021 WL 3023087, at *5 (E.D.N.Y. July 16, 2021) (compelling arbitration where "the parties nearly completed fact discovery with only one deposition remaining.") Thus, the Court finds that here, where fact discovery has just commenced and no depositions have been taken, that Defendants have not waived enforcement of the arbitration agreement.

1. **Medical Malpractice**

Finally, Plaintiff asserts that "under New York State law, despite an 'agreement' to arbitrate disputes, medical malpractice defendants who participate in litigation before making any demand for arbitration waive their right to arbitrate." (ECF No. 21-9 at 5.) (citing Figueroa v. Flatbush Women's Services, Inc, 344 A.D. 2d 453 (2d Dep't 1997); then citing Hyde v. Jewish Home Lifecare, 149 A.D.3d 674, 674, 53 N.Y.S.3d 57, 59 (2017)). First, the Court has examined these cases and the applicable law and does not find that they stand for Plaintiff's purported proposition

8

that there is a special rule for waiver of arbitration in medical malpractice cases. Second, and perhaps more important, Plaintiff does not assert a cause of action for medical malpractice. Thus, the Court finds that Defendants have not waived enforcement of the arbitration provision.

### D. Stay of the Instant Proceedings

Having determined that Plaintiff's claims are wholly governed by the arbitration clause, the Court must stay the instant action pending arbitration. See Katz v. Cellco P'ship, 794 F.3d 341 (2d Cir. 2015) (finding that the Federal Arbitration Act requires courts to stay actions where claims are wholly arbitrable and either party has requested a stay).

### IV. CONCLUSION

Defendants' motion to compel arbitration is GRANTED and the instant action is STAYED pending arbitration between the parties.

**SO ORDERED.**
Dated:   May 14, 2025
         Central Islip, New York

                                        /s/ (JMA)
                                    JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE